UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL WARREN, | ) | Case No.  3:09CV1603 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | MEMORANDUM OPINION & ORDER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Daniel Warren ("Plaintiff") requests judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security ("Commissioner") finding that he was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") from October 30, 2002 through the date of the Administrative Law Judge's (ALJ) decision rendered on August 25, 2008. ECF Dkt. #14.  For the following reasons, the undersigned affirms the ALJ's decision.

I.      **PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI in November 2004, alleging disability beginning December 1, 2000 for DIB purposes and January 24, 2000 for SSI purposes[1] due to back and hip pain, and memory and concentration problems due to pain.  Tr. at 79-84, 106-120, 149, 369.  The  Social Security

---

[1]  The Social Security Administration (SSA) had declined to reconsider Plaintiff's previous application for DIB on October 29, 2002 and the ALJ dismissed a request for a hearing after Plaintiff failed to respond to inquiries by the ALJ and his prior counsel.  Tr. at 31; ECF Dkt. #14 at 1.  The ALJ in this case found no reason for reopening the prior denial of reconsideration and found that that determination was final and binding through October 29, 2002, the date of the denial.  Tr. at 31.  Accordingly, the ALJ in this case concerned herself only with Plaintiff's claims of disability from October 30, 2002 through the date of her decision and used information prior to the October 30, 2002 date for purposes of background information only.  *Id.*

Administration (SSA) denied the claims and affirmed the denials upon reconsideration. *Id*. at 79-84, 363-367. Plaintiff requested a hearing before an ALJ, and at the ALJ hearing, Plaintiff testified with counsel present. *Id.* at 72, 371.  A vocational expert (VE) also testified at the hearing. *Id.*

On August 25, 2008, the ALJ issued an unfavorable decision finding that Plaintiff was not entitled to disability from October 30, 2002 to the date of her decision. Tr. at 39.  The ALJ found that Plaintiff had the severe impairments of a history of lumbar disc surgery in 1996, trochanteric bursectomy in December 2001, chronic low back and hip pain with bursitis, and left leg pain. *Id*. at 33.  She found Plaintiff's mild dysthymia to be nonsevere. *Id.*  The ALJ further found that none of Plaintiff's severe impairments met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 34.  The ALJ determined that Plaintiff was able to perform light work that allowed a sit/stand option for comfort. *Id.* at 35.  She found that insufficient medical evidence existed in which to support the opinion of Plaintiff's treating physician, Dr. Harwood, who had opined that Plaintiff was permanently disabled. *Id*. at 36.  She also partially discounted Plaintiff's credibility. *Id*. at 37.  The ALJ found that Plaintiff was unable to perform his past relevant work, but with the RFC that she had determined, he could perform a significant number of jobs existing in the national economy as identified by the VE, such as cabinet assembler, buffing machine operator, laundry folder, mail clerk, and hand trimmer. *Id.* at 38-39.

Plaintiff requested that the Appeals Council review the ALJ's decision and the Appeals Council reviewed the request and denied it. Tr. at 5-26.  Plaintiff filed an appeal to this Court and Defendant answered.  ECF Dkt. #s 1, 12.  Both parties have consented to the undersigned's jurisdiction and have filed briefs addressing the merits of the case. ECF Dkt. #s 8, 14, 16. Plaintiff filed a reply brief and the undersigned granted Defendant leave to file a surreply. *Id.* at 18, 19, 20.

-2-

At issue is the ALJ's August 25, 2008 decision, which stands as the final decision.  Tr. at 30-40.

## II.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to

DIB or SSI.  These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.   If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.   If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with

the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v.*

*Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## III.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes

a determination of disability.  This Court's review of such a determination is limited in scope by § 205

of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## IV.    ANALYSIS

The Court will address Plaintiff's assertions of error out of the order in which he presents them and in the order of the sequential steps for evaluating disability. Accordingly, the Court first addresses the ALJ's evaluation of the opinions of Dr. Harwood, Plaintiff's treating physician, and Dr. Evans, the agency-examining psychologist. ECF Dkt. #14 at 15-18.

### A.    PHYSICIANS' OPINIONS

#### 1.    TREATING PHYSICIAN

Plaintiff asserts that the ALJ erroneously evaluated the opinions of Dr. Harwood, his treating physician. ECF Dkt. #14 at 16. Plaintiff's only specific assertion regarding the ALJ's evaluation of Dr. Harwood's opinions is that Dr. Harwood opined that Plaintiff was "significantly more limited than

-4-

the ALJ accepted." *Id.* at 16, citing Tr. at 100-01, 263-264, 273-274, 276.  Plaintiff cites Dr. Harwood's April 2005 opinion that Plaintiff could work only six hours of an eight-hour workday, with four hours of standing and two hours of sitting, never stooping, and needing to lie down for an hour during the workday. *Id.*, citing Tr. at 273.  Plaintiff contends that the ALJ gave more weight to the opinion of one-time agency-examining physician Dr. Al-Truk than to those of Dr. Harwood, even though Dr. Al-Truk's opinion was issued in February 2005 and the ALJ's period of adjudicatory review encompassed the period of October 2002 through August 2008. *Id.* at 17.

The Court notes that the ALJ did not specifically state the weight that she was attributing to the opinions of Dr. Harwood.  The ALJ must articulate "good reasons" for not attributing controlling weight to a treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ must give controlling weight to the opinions of a treating physician if the ALJ finds that the opinions on the nature and severity of an impairment are "well supported by medically acceptable clinical and laboratory diagnostic techniques and []not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2).  If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record.  20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

-5-

While the ALJ did not specifically articulate the weight that she gave to Dr. Harwood's opinions, the Court finds this error to be harmless.  The Sixth Circuit has held that the good reason requirement "does not require conformity at all times" and such a failure amounts to harmless error

> if the ALJ has met the goals of the procedural requirement-to ensure adequacy of review and to permit the claimant to understand the disposition of his case-even though he failed to comply with the regulation's terms. *Id. [Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)].  An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *4 (6th Cir. Aug. 12, 2010), unpublished, citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-472 (6th Cir. 2006) and *Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x 456, 464-465 (6th Cir. 2005).

Here, the ALJ complied with the goals of the procedural requirement of the treating physician rule.  She reviewed Dr. Harwood's February 2005 medical source statement of Plaintiff's RFC and his June 2005 RFC assessments.  Tr. at 36.  In his February 2005 medical source statement, Dr. Harwood opined that Plaintiff could stand thirty minutes at a time, standing six hours of an eight-hour day, sit for thirty minutes at a time, and sit for two hours per eight-hour day.  *Id*. at 273.  He further concluded that Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally, and never balance or work around dangerous equipment, he could occasionally operate a motor vehicle and needed to lie down for one hour during an eight-hour workday.  *Id.*  Dr. Harwood indicated that Plaintiff's degenerative disc disease with radiculopathy and herniated disc at L4-L5 were the conditions which resulted in his opined limitations.  *Id.*  He further reported that Plaintiff was taking Percocet for pain four times per day.  *Id*. at 274.  The medical source statement contained a "Comments" section requesting that the doctor use the space provided on the form or a separate paper

to describe the aspects of the patient's medical history, clinical findings, lab findings, diagnoses and responses to the treatments that supported the doctor's opinion of the patient's functional limitations. *Id.* Dr. Harwood did not complete this section and did not attach a letter accompanying the statement.

On a form dated June 20, 2005, Dr. Harwood indicated that he had treated Plaintiff since 1996 and he concluded that Plaintiff was "unable to work, & this is a permanent disability." Tr. at 276. Dr. Harwood described Plaintiff's clinical abnormalities as low back pain and left hip pain and concluded that Plaintiff's intensity/persistence of pain was consistent with the findings he customarily observed in others with the same degree of physical findings. *Id*. He further indicated that Plaintiff had 20 degree flexion at the waist in December 2003 which limited his motion and he walked with a limp. *Id*. The form further indicated that if necessary, the doctor could elaborate his findings and conclusions on a separate sheet of paper or on the back of the form. *Id.* Dr. Harwood did not.

The ALJ did not agree with Dr. Harwood's opinions that Plaintiff was disabled, that he had a limited ability to bend, or that he needed to lie down during the workday. Tr. at 36. Medical source statements concluding that a claimant is disabled are not entitled to any special significance or weight since whether a claimant is disabled is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e); 416.927(e). Determining disability is "ultimately the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004), quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Accordingly, the Court finds no merit to Plaintiff's argument to the extent that he asserts that the ALJ erred in giving no weight to the disability opinions of Dr. Harwood.

In addition, it is the ALJ, not a physician, who ultimately determines the RFC of a claimant. *Coldiron*, 2010 WL 3199693, citing 42 U.S.C. §423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed.

App'x 574, 578 (6th Cir. 2009)("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner"); 20 C.F.R. § 404.1546.  Thus, an ALJ evaluates and weighs the medical evidence and a claimant's testimony in order to determine a claimant's RFC.  *Coldiron*, 2010 WL 3199693, at *3, quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)(citation omitted).

In her decision, the ALJ agreed with Dr. Harwood that Plaintiff could not return to his past relevant work because he could not work at a medium exertional level.  Tr. at 36.  The ALJ further agreed that Plaintiff could lift and carry objects at the light exertional level and needed to have a sit/stand option.  *Id.*  She also accounted for Plaintiff's need to take Percocet in limiting him to a light level of work.  *Id.*  However, the ALJ found that Dr. Harwood's reports and notes failed to provide sufficient medical observations which would prevent a finding that Plaintiff could perform light work with the only restriction being a sit/stand option for comfort.  *Id*.

In discounting Dr. Harwood's February 2005 medical source statement and his June 2005 RFC, the ALJ noted that these documents were only "checklists" which "briefly commented" on Plaintiff's impairments.  Tr. at 36.  Indeed, Dr. Harwood's February 2005 medical source statement contains no explanation as to the limitations opined by Dr. Harwood, except a listing of Plaintiff's diagnoses as degenerative disc disease and herniated disc.  *Id*. at 273.  In fact, the form itself indicated that Dr. Harwood should describe the medical history, clinical findings, lab findings, diagnoses and responses to treatment upon which his RFC was based for Plaintiff.  *Id*. at 274.  Dr. Harwood did not provide such information.  Accordingly, it is not supported by "medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1527(d)(2).  The same can be said of the RFC provided by Dr. Harwood in which he opined that Plaintiff was unable to work and was permanently

disabled. Tr. at 276.  He did not elaborate or provide support for his conclusions.

Further, substantial evidence supports the ALJ's determination that Dr. Harwood's opinions were contradicted by other substantial evidence in Plaintiff's case record, objective evidence which was more detailed and supported than the opinions of Dr. Harwood.  For example, as pointed out by the ALJ, Dr. Al-Turk provided an examination report that was quite detailed regarding clinical findings and signs upon examination.  Tr. at 36, citing Tr. at 265-273.  While he examined Plaintiff only once, the detail provided in his report, which included manual muscle testing, ranges of motion, and review of a January 13, 2004 MRI report, supported the weight that the ALJ gave to his opinion which concluded that Plaintiff had no limitations.  *Id*. at 265-273.  As also pointed out by the ALJ, the medical consultant, Dr. Congbalay, opined that Plaintiff could perform medium work and supported her opinion with objective medical evidence, including a discussion of Plaintiff's medical history, an assessment of Dr. Harwood's opinions of disability, and objective medical evidence contradicting Dr. Harwood's opinions, including minimal x-ray findings and Dr. Al-Turk's examination findings.  While the ALJ found Plaintiff capable of less than medium work, she could nevertheless rely upon the Dr. Congbalay's review of the objective medical evidence.

Since the ALJ complied with the goals of the treating physician rule and substantial evidence supports the ALJ's treatment of the medical opinions, the Court finds no merit to Plaintiff's assertion that the ALJ erroneously evaluated Dr. Harwood's opinions.

## **2**.    **AGENCY-EXAMINING PSYCHOLOGIST**

Plaintiff also contends that the ALJ erred by finding that his mental impairment was not severe and in failing to place a mental limitation in the RFC because the ALJ failed to evaluate Dr. Evans' August 2005 opinion that Plaintiff had a mild limitation in his ability to perform simple, repetitive

tasks. ECF Dkt. #14 at 17. The Court finds no merit to this assertion.

Dr. Evans, the agency-examining psychologist, did in fact opine that Plaintiff had many mild limitations in mental abilities, including understanding and following simple, repetitive directions, concentrating and attending to tasks, and withstanding stress and pressures. Tr. at 284. However, the Social Security Regulations provide that a mental impairment is considered non-severe when the degree of limitation in the functional areas of activities of daily living, social functioning, and concentration, persistence or pace is determined to be "none" or "mild" and there are no episodes of decompensation, unless the evidence indicates more than a minimal limitation in the ability to perform basic work activities. 20 C.F.R. § 404.1520a(d); 20 C.F.R. 416.920a(d). Here, Plaintiff does not point to any evidence and the evidence fails to show that Plaintiff's mental condition has more than a minimal limitation in his ability to perform basic work activities.

Plaintiff is correct that the ALJ did not articulate her evaluation of Dr. Evans' opinion, although she mentioned the opinion in evaluating whether Plaintiff's mental impairments were severe impairments and whether Plaintiff had any impairments that met or medically equaled a Listing. *Id.* at 33, 34. She noted that Plaintiff's mental health functioning and limitations had been assessed and Plaintiff had no psychiatric treatment in the past, Plaintiff did not claim any on-the-job conflicts or cognitive problems, and he did not indicate that he stopped working due to a mental health impairment. *Id.* at 33. The ALJ further noted that Plaintiff did not claim any marked limitations due to depression at any time. *Id.*

While the ALJ did not explicitly discuss the mild limitations that Dr. Evans opined in his August 2005 report, the Sixth Circuit has found that the ALJ's failure to discuss the opinion of a consultative, non-treating source is harmless error where the ALJ's decision is otherwise supported

-10-

by substantial evidence.  *E.g., Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir.2005) (Court found harmless error when ALJ failed to mention report of consultative neurologist who evaluated plaintiff only once and was not a treating physician); *Dykes v. Barnhart*, 112 F. App'x 463, 467-69 (ALJ's failure to discuss the opinion of a consulting examiner was harmless error).  Dr. Evans' conclusions of mild limitations, coupled with the mild limitations and finding of no episodes of decompensation by agency reviewing psychologist Tonnie Hoyle on August 31, 2005, constitute substantial evidence to support the ALJ's finding of a non-severe mental impairment and a RFC that contained no limitations based upon mental impairments.

### B.    CREDIBILITY DETERMINATION

Plaintiff also complains that substantial evidence does not support the ALJ's decision to discount his credibility.  ECF Dkt. #14 at 13.  Plaintiff alleges that the ALJ unreasonably discounted his credibility based upon a number of facts without legal authority or evidence in which to do so.  In her credibility analysis, the ALJ mentioned that Plaintiff continued to smoke, lost his driver's license due to driving under the influence, failed to report any alcohol rehabilitation treatment in recent years and settled his worker's compensation claim.  *Id.* at 13-14.  Plaintiff contends that the ALJ used these findings to partially discount his credibility and provided no authority for determining that a smoker, an unlicensed driver, a person who does not have a substance abuse disorder, or a person who settles a worker's compensation claim is more likely to be dishonest or to exaggerate his complaints than those who do not do these things.  *Id.*  Plaintiff also asserts error with the ALJ's discussion of Plaintiff's "very limited activities, such as watching television, doing small household chores, and putting models together" which were used to find that he could perform full-time light work.  *Id.* at 14.  Plaintiff further asserts that the ALJ unreasonably relied upon the absence of recent physical

-11-

therapy records in order to discount his credibility. *Id*. at 15. Plaintiff concludes that "in sum, substantial evidence does not support the ALJ's adverse credibility finding." *Id*. at 15.

Substantial evidence does support the ALJ's credibility determination. The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929, SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the

location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that the objective medical evidence of Plaintiff's back and hip operations could cause musculoskeletal limitations.  Tr. at 37.  However, she found that the evidence of record did not support the severity of the alleged disabling pain and limitations that Plaintiff alleged. *Id.* The ALJ did mention that Plaintiff continued to smoke, lost his driver's license, settled his worker's compensation claim, and failed to report any alcohol rehabilitation in recent years. *Id.*  If these were the only findings that the ALJ mentioned in the credibility part of her decision, the Court would agree with Plaintiff that substantial evidence would certainly not support the discounting of his credibility. But the ALJ looked at much more than these facts.  The ALJ cited to the objective medical findings after Plaintiff's back and hip operations, which were limited, and the lack of recent physical therapy records which would have been expected if Plaintiff's pain allegations and limitations were as severe as he alleged. *Id.*  She also discussed the clinical findings of Dr. Al-Turk, which showed that Plaintiff moved his knees and hips normally, he had normal ranges of motion in his back and hip. *Id.*  Dr. Al-Turk had opined that Plaintiff could perform at least light duty work, even with a January 13, 2004 MRI showing an impression of focal herniation at the L4-L5 disk with intervertebral progression. *Id.* at 36, 272.  The ALJ also cited the state agency physician's findings, which considered Dr. Harwood's reports and the report of Dr. Al-Turk. *Id.*  The ALJ also considered Plaintiff's daily living activities,

his conservative treatment through Dr. Harwood,  and his use of Percocet, which are all factors to consider in assessing credibility.  *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987).  The ALJ reduced Plaintiff's exertional level of work to light based upon the levels of Percocet taken by Plaintiff.  Tr. at 36.

Since the ALJ relied upon findings other than those cited by Plaintiff, findings which were supported by substantial evidence and required by the regulations, the Court finds no merit to Plaintiff's credibility assertion.

### C.    EDUCATIONAL LEVEL

Plaintiff asserts that substantial evidence does not support the ALJ's finding that he had a high school education.  ECF Dkt. #14 at 18.  He states that Dr. Evans administered the Nelson-Denny Reading Comprehension Test and the results showed that he read at the seventh grade level.  *Id.* at 19. Plaintiff contends that this error in using his numerical grade rather than the recent test results to determine his educational level was harmful because some of the jobs underlying the ALJ's step five analysis, including the cabinet assembler, buffing machine operator and mail clerk, required more than rudimentary reading.  *Id.*  Plaintiff cites to various regulations and to *Skinner v. Secretary of Health and Human Services*, 902 F.2d 447, 450 (6th Cir. 1990) for the proposition that the ALJ should have relied upon the recent results of Dr. Evans showing that he had a seventh grade reading level instead of the numeric grade level that he completed in school.  ECF Dkt. #14 at 18-19.

At the hearing, Plaintiff testified that he had a twelfth grade education.  Tr. at 377.  He also indicated on the Disability Report form that the highest grade of school that he completed was twelfth grade.  *Id.* at 134.  He further indicated that he had no problems following spoken instructions or following written instructions.  *Id.* at 183.  Moreover, when the ALJ presented the hypothetical question to the VE, which expressly included a twelfth grade education, Plaintiff's counsel did not

object to the use of his numeric grade level at that time. *Id*. at 391. Accordingly, the Court finds that the error was waived.

Even if the error were not waived, a person with a seventh grade education is considered to have a limited education which "means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3). The VE identified Plaintiff's prior employment as a machinist and press operator as skilled and semi-skilled work, which indicates that Plaintiff had sufficient educational abilities in order to perform semi-skilled and skilled work. Tr. at 390. In addition, Plaintiff cites to only three of the five jobs identified by the VE that he could not perform with a limited education. The VE found that Plaintiff could also perform the jobs of laundry folder and hand trimmer, unskilled jobs which require a marginal education, that is, formal schooling at a sixth grade level or less. 20 C.F.R. § 404.1564(b)(2); Tr. at 392. The VE indicated that 750 to 1000 laundry folder jobs existed in the greater Toledo area and 200 to 250 hand trimmer jobs existed in the same area. *Id*. at 393.

Moreover, as pointed out by Defendant, Plaintiff was 49 years old at the time of the hearing and graduated from high school many years earlier. 20 C.F.R. § 404.1564(b) provides that a claimant's formal education that was completed many years before his impairment began "may no longer be useful or meaningful in terms of your ability to work." Plaintiff's prior jobs of a machinist and press operator were identified by the VE as skilled and semi-skilled work and Plaintiff had sufficient educational abilities in order to maintain his prior employment in these positions. Tr. at 390.

For these reasons, the Court finds no merit to Plaintiff's assertion of ALJ error with respect to his educational level.

### D.    SIT/STAND OPTION

Plaintiff also asserts errors with regard to the ALJ's determination of a sit/stand option.  ECF Dkt. #14 at 5.  Plaintiff contends that the ALJ erroneously failed to determine how long he could sit and stand without interruption because she found that he could sit and stand "for comfort."  *Id.*  Plaintiff cites to SSR 83-12 and SSR 96-9p as support for his assertion that the ALJ erred in failing to determine how long he could sit or stand without interruption.  ECF Dkt. #14 at 5. Plaintiff consequently states error with the hypothetical question presented by the ALJ to the VE because it also did specify a time period for the sit/stand limitation.  *Id.*  Plaintiff contends that the VE did not cure the alleged defect with his testimony.  *Id.* at 6-7.

Plaintiff apparently relies upon the part of SSR 96-9p that states that the occupational base for a full range of unskilled sedentary work will be eroded when an individual needs to alternate sitting and standing for the length of time or frequency beyond that provided for by scheduled work breaks and the lunch period.  SSR 96-9p.  SSR 96-9p goes on to state that "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."  *Id.*  SSR 83-12 states that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12.

In any event, SSR 96-9p and SSR 83-12 both state that a VE should be consulted in order to determine whether a claimant who requires a sit/stand option is still able to perform other work.  SSR 96-9p states that "it may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work."  SSR 83-12 states that "[i]n cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base."  Further, the Sixth Circuit has held that "a claimant is not disabled simply based upon a need to alternate between sitting, standing and walking, if a vocational expert can identify" jobs in the national economy which the claimant can

perform. *Bradley v. Sec'y of Health and Human Resources*, 862 F.2d 1224, 1227 (6th Cir.1988).

Here, the ALJ did not specify the frequency or the duration of the sit/stand option that she determined. However, the Court finds that this failure was harmless error. Other courts have found that an ALJ's failure to specify the frequency with which a claimant must exercise a sit/stand option to be harmless, especially when the VE interpreted the sit/stand option as an "at-will" frequency and determination and answered the hypothetical question by providing jobs that could be performed by the person with an at-will sit/stand option. *See Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)(ALJ's hypothetical to VE not defective for failing to specify frequency of claimant's need for sitting and standing when questions to VE highlighted need to sit and stand at will); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)(ALJ who stated that claimant could "sit or stand at her 'own option'" provided sufficient analysis of sit/stand option); *Abraham v. Comm'r of Soc. Sec.*, no. 1:08CV117, 2008 WL 4738333, at *4 (W.D. Mich. Oct. 24, 2008), unpublished (ALJ addressed frequency of exercising sit/stand option when he found that claimant could "sit or stand as needed through the work day" and VE identified only those jobs with this sit/stand option).

While it would have been desirable for the ALJ to specify a definition of sitting and standing "for comfort" in terms of frequency and duration, the ALJ adopted the VE's interpretation of her "for comfort" option as an at-will sit/stand option. The ALJ presented a hypothetical question to the VE with Plaintiff's background and education and limitations to a light level of work "which would allow for the option of sitting or standing for comfort." Tr. at 391. When Plaintiff's attorney asked the VE about the sit/stand option with regard to jobs identified in response to the ALJ's hypothetical individual, the VE responded:

> A :   Well, I tried to identify jobs that one could basically alternate at will so that there would be no disruption in the flow. Obviously, something like a cabinet assembler, one is going to have to be on one's feet at certain times to get around the cabinet or something like that. I would say that there would- - -this is a generality. These would require one to be on one's feet for maybe half the day, if that. That's actually required.

Q      (by Plaintiff's counsel):
       So a person would have to be able to be on their feet four hours a day total,
       although they could sit when they needed to, the standing would have to total
       half the day, is that correct?

A:     In general, yes.

*Id.* at 395-396.  Thus, the VE explained that he was citing jobs in which a person would be on his feet

a total of four hours a day, but the sitting and standing could alternate depending upon the need of the

person.  *Id.*  The ALJ accepted the testimony of the VE, including the jobs cited which included the

VE's interpretation of her sit/stand option, in order to find that a significant number of jobs existed

in the national economy which Plaintiff could perform.  *Id.* at 38-39.  Plaintiff does not challenge the

finding that he could be on his feet a total of four hours per day.  Rather, he only challenges the ALJ's

failure to specify the meaning of "for comfort."

       Since the VE interpreted the ALJ's "for comfort" sit/stand option as an "at-will" sit/stand

option, and the ALJ accepted that meaning by adopting the VE's testimony, the Court finds that the

ALJ's failure to specify the meaning of "for comfort" to be harmless error, which was cured by the

VE's testimony.

### E.      STEP FIVE DETERMINATIONS

       Plaintiff also alleges numerous errors with regard to the ALJ's step five analysis and findings.

ECF Dkt. #14 at 8-13, 18-19.  The Court finds no merit to these contentions.

### 1.      SIT/STAND OPTION AND SSR 00-4P

       Plaintiff first asserts that the ALJ violated SSR 00-4p because substantial evidence did not

support his finding that the VE's testimony was consistent with the Dictionary of Occupational Titles

("DOT").  ECF Dkt. #14 at 10.  Plaintiff complains that the ALJ did not obtain the "reasonable

explanation" that SSR 00-4p requires when the VE's testimony conflicted with the DOT.  *Id.*  He

contends that the VE's testimony conflicted with the DOT because light work requires the ability to

stand and/or walk for a total of six hours per day and the VE identified "light" jobs in response to the

ALJ's hypothetical question that required remaining on one's feet for only four hours per day. *Id*.

Plaintiff also cites error by the ALJ because he failed to obtain a "reasonable explanation" that SSR

00-4p required to explain the conflict between the DOT and the VE's testimony that the jobs he

identified allowed a sit/stand option. *Id*. at 10-11.

> SSR 00-4p provides in relevant part that:

>> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

>> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p. An ALJ's failure to comply with SSR 00-4p can constitute either reversible or harmless

error. *Bratton v. Astrue*, No. 2:06-0075, 2010 WL 2901856, at *3 (M.D. Tenn. July 19, 2010).

Plaintiff in the instant case concedes that the ALJ fulfilled his "affirmative responsibility"

under SSR 00-4p to ask the VE whether his step five testimony was consistent with the DOT. ECF

Dkt. #14 at 9. Indeed, the ALJ did ask that the VE instruct her about any conflicts between the VE's

testimony and the DOT should conflicts arise and to advise her as to how his testimony conflicted and

why. Tr. at 374. However, Plaintiff asserts that substantial evidence does not support the ALJ's

finding that the VE's testimony was consistent with the DOT. ECF Dkt. #14 at 10. Plaintiff

complains that the VE's testimony conflicted with the DOT as a matter of law in two ways and the

ALJ failed to obtain the required "reasonable explanation" under SSR 00-4p for the VE's departure

from the DOT as to these two issues. *Id.*

Plaintiff first asserts that the VE's testimony conflicted with the DOT because he identified

jobs as light work which required remaining on one's feet for four hours of an eight-hour workday. ECF Dkt. #14 at 10. Plaintiff contends that SSR 83-10 and the DOT define light work as requiring the ability to stand and/or walk for a total of six hours per workday, not four hours per workday. *Id*.

The Court notes that the VE did not report any conflicts between his testimony and the DOT. Since the VE identified no conflicts, the ALJ could rely on his testimony, especially since Plaintiff's counsel was given a full opportunity to cross-examine the VE in this case and indeed did so. The Sixth Circuit has held that "nothing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir.2008), citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374-375 (6th Cir. 2006); *see also Ragsdale v. Shalala*, 53 F.3d 816, 819 (7th Cir.1995) (failure to challenge basis of vocational expert's testimony at administrative hearing constitutes waiver of the issue in the district court).

Moreover, the Court finds that no conflict existed between the DOT and the VE's testimony that the jobs he identified were light jobs that required being on one's feet for four hours per workday. SSR 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. "This ability is required to perform a *full* range of light work." *See Lambert v. Comm'r of Soc. Sec.*, No. 5:08CV1908, 2010 WL 546756, at *4 (N.D. Ohio Feb. 11, 2010). Here, the ALJ did not find that Plaintiff could perform the full range of light work. Rather, she indicated that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work [light work] has been impeded by additional limitations." Tr. at 38. The ALJ then correctly indicated that she then asked the VE to identify jobs that a hypothetical person with Plaintiff's background and age, and RFC could perform in order to determine the extent to which the light work job base was eroded by the additional limitations. *Id.* The ALJ presented the

VE with the sit/stand option "for comfort" and the VE testified as to the jobs available with his interpretation of this limitation, which was an at-will sit/stand option.  The ALJ adopted the VE's interpretation of her "for comfort" sit/stand option and relied upon the VE's testimony of jobs that allowed for such an option.  The ALJ followed the instruction of SSR 83-12 with regard to the sit/stand option which requires an ALJ to consult with a VE in "cases of unusual limitation of ability to sit or stand" so that the occupational base can be clarified.

The Court also rejects Plaintiff's assertion that the ALJ erred in not obtaining a reasonable explanation under SSR 00-4p from the VE as to the sit/stand option for the jobs that he identified.  It is questionable whether VE testimony regarding a sit/stand option conflicts with the DOT since the DOT is silent as to a sit/stand option.  Courts in this Circuit have concluded that the DOT's silence on the sit/stand option creates no conflict and an ALJ satisfies SSR 00-4p merely by asking the VE if his testimony is consistent with the DOT.  *Street v. Comm'r of Soc. Sec.*, No. 09-02038 CW, 2010 WL 1347602, at *7 (E.D. Mich. Mar. 2, 2010), citing generally, *Martin v Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 375-376 (6th Cir. 2006)("Once the ALJ asked the vocational expert if her testimony was consistent with the DOT, the ALJ satisfied its requirements under the SSR 00-4p.  It was Martin's duty, acting through counsel, to present her case to the ALJ."); *Bennett v. Astrue*, No. 5:07CV38-J, 2008 WL 345523, at *6 (W.D. Ky. Feb. 7, 2008), unpublished (DOT does not address sit/stand option and thus no conflict or inconsistency exists between DOT and VE testimony on the subject).  The undersigned follows the conclusion of the cases in this Circuit that the DOT's silence on the issue of the sit/stand option does not create a conflict with VE testimony regarding jobs available in the economy that would allow for a sit/stand option.

Further, the ALJ in this case complied with SSR 83-12, which addresses the sit/stand option. SSR 83-12 provides in relevant part that a claimant who requires alternating periods of sitting and standing is not functionally capable of performing the prolonged sitting required by sedentary work

or the prolonged standing or walking contemplated by most light work. SSR 83-12. The Ruling goes on to state that some jobs in the national economy permit at will sitting and standing but most unskilled jobs do not ordinarily allow for a person to sit or stand at will. *Id.* The Ruling then states that "in cases of unusual limitation of ability to sit or stand, a VS [VE] should be consulted to "clarify the implications for the occupational base." *Id.*

The ALJ in this case complied with SSR 83-12 in consulting with the VE who provided specific testimony as to the occupational base in response to the hypothetical presented by the ALJ which contained a sit/stand option. The VE testified that he based his job identification upon a compilation of Occupational Employment Statistics and Standard Occupational Classifications from the Department of Labor and he identified a significant number of jobs that permitted a sit/stand option. Tr. at 399-400. Thus, the VE identified jobs that were not "ordinary" in that they allowed for a sit/stand option and he clarified the occupational base implications for a sit/stand option.

Accordingly, the Court finds no merit to Plaintiff's assertions that the ALJ violated SSR 00-4p or otherwise erred in her step five determination and reliance upon the VE's testimony.

## **2**.     **PART-TIME WORK**

Plaintiff also complains that the ALJ did not meet the burden at step five because the VE did not differentiate the jobs that he identified into full and part time jobs. ECF Dkt. #14 at 12-13. Plaintiff contends that the ALJ therefore did not comply with SSR 96-8p. *Id.* at 13.

Social Security Ruling 96-8p provides that:

> [o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

SSR 96-8p. In *Holbrook v. Astrue*, No. 09-107-ART, 2010 WL 1234527, at \*4 (E.D. Ky. Mar. 23, 2010), the Eastern District of Kentucky Federal District Court held that SSR 96-8p "applies to RFC determinations, not to step five decisions about other available employment." That court relied upon

-22-

the Seventh Circuit Court of Appeals' decision in *Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009) to reject the argument that the ALJ erred in failing to ask the VE whether the jobs he testified the claimant could perform were part-time or full-time.  The *Holbrook* court noted that the Sixth Circuit had yet to address whether SSR 96-8p alters an ALJ's step five obligations, but found the reasoning in *Liskowitz* persuasive.  *Id.*

This Court finds *Liskowitz* persuasive as well.  In *Liskowitz*, the VE testified that she had no way of knowing how many of the jobs that she identified that Liskowitz could perform were part-time jobs.  559 F.3d at 744.  The Seventh Circuit noted that on its face, SSR 96-8p applies to the ALJ's RFC determination, not to the testimony of the VE.  That court noted the distinction between the RFC determination required by the ALJ and the ALJ's step five finding that there are a significant number of jobs in the national economy that a claimant can perform:

> Ruling 96-8p does not say, not do we interpret it to imply, that a VE may permissibly testify only as to the availability of full-time jobs.  On the contrary, to say that the ALJ may deny benefits only if she finds the claimant capable of some form of full-time work is quite different from saying that only full-time jobs can constitute significant work in the national economy.

*Id.*  The *Liskowitz* court therefore held that a VE need not specify as part-time the percentage of jobs about which he testifies.  *Id*.  That court held that a claimant can rebut the VE's testimony by showing that a substantial amount of the jobs identified by the VE are part-time jobs, but if the claimant does not do so, the ALJ can rely on the VE's testimony and find that the jobs identified constitute a significant number of jobs that the claimant is capable of performing.  *Id.*

Here, the Court finds that SSR 96-8p applies to the RFC determination, as found in *Holbrook* and *Liskowitz*, and not to the step five determination as argued by Plaintiff.  Further, Plaintiff has not shown that a substantial percentage of the jobs identified by the VE are part-time jobs after the VE testified that he had no way of knowing the percentage of the jobs that he identified were part-time jobs.  Tr. at 400.  Accordingly, the Court finds no merit to Plaintiff's contention.

**V.**    **CONCLUSION**

For the foregoing reasons, the Court the Court affirms the ALJ's decision and dismisses the instant case in its entirety with prejudice.

　　*/s/ George J. Limbert*　  9/20/10　　
GEORGE J. LIMBERT
U.S. MAGISTRATE JUDGE